*559 had occurred. “Until the parents realize their role in all of this,” Ms. Williams explained, “then [T.B.] is never going to be safe in that home.” Ms. Williams added that the girls were doing well in the custody of their grandparents and recommended that they remain there. Similarly, Cynthia Dauner, the Court Appointed Special Advocate (“CASA”) of Jefferson Parish, recommended that the children remain with their grandparents.
After this hearing, the parents continued with the 'case plan and T-PEP continued to compile monthly progress reports. The reports of September and October 2015 included similar findings as the August report: neither R.C. nor J.G. demonstrated progress, continuing to deny that the sexual abuse had occurred. And the October report included a new observation:
[R.C.] has also expressed her belief that she can support [T.B.], and parent her warmly, without believing [T.B.] ’s allegations of sexual abuse. This is a significant concern because [R.C.] appears unaware of the way in which her beliefs and feelings negatively affect her emotional presentation and behaviors as a parent, and thus affect her daughter.
For the months of November and December 2015, T-PEP issued one report, which reflected that J.G. and R.C. continued to deny the sexual abuse. This report also reflected that R.C. persisted in her failure to understand how her denial of the abuse affects her parenting ability:
[R.C.] verbalized her desire to support [T.B.]- regardless of her" own beliefs about [T.B.’s] experience of- sexual abuse. However, she does not seem [to] recognize how her disbelief and her feelings about [T.B.’s] allegations do, and likely would, affect her ability to truly be supportive and protective of her daughter. ... [R.C.] denies that her feelings about [T.B.’s] sexual abuse play a role in her ability to parent [T.B.] effectively and sensitively.
The November/December report further reflected that J.G. had ceased communication with T-PEP oh December 8, 2015 and that T-PEP planned to discontinue services with R.C. and J.G. due to their lack of demonstrable progress. J.G. committed suicide on January 6, 2016.
In anticipation of the next hearing, DCFS submitted to the court its own report, dated January 8, 2016. This report found that R.C. “has not yet indicated an acceptance of [T.B.’s] experience of sexual abuse, expressed genuine empathetic understanding related to [T.B.’s] experiences, emotions, and related needs, or made progress that indicates she would protect her daughters differently in the future.” The report expressed further concern...
.. .that [R.C.] has not sufficiently developed an understanding of [T.B.’s] sexual abuse and its effects, and as such [the agency] cannot say with any confidence that she would make appropriate decisions and choices in the future to adequately protect [T.B.] or that she could support [T.B.’s] optimal recovery from past sexual abuse. [R.C.] has not made demonstrable progress that remediates the concerns that brought the children into care.
On January 19, 2016, the court conducted the permanency hearing in accordance with La. Ch.C. art. 702, the purpose of which was to determine the permanent plan for the children. See La. Ch.C. art. 603(21).
The testimony offered at the permanency hearing reiterated the findings by T-PEP and DCFS. Daria Morris, the DCFS supervisor on the case, testified that R.C. “never really grasped the abuse that [T.B.] experienced” and recommended that the girls remain with their grandparents. The *560 CASA advocate agreed that the girls should remain in the custody of their grandparents. Ms. Morris further N'ided that the girls were doing well with their grandparents: receiving all medical and therapeutic treatment and excelling in school.
R.C. testified at this hearing. She still failed to indicate an acceptance of her daughter’s allegations of sexual abuse, stating: “I believe that something happened to [T.B.] and I’m not sure what that is.”
At the conclusion of the hearing, the court permanently placed T.B. and Z.C. in the guardianship of their grandparents. The court explained its findings to R.C.:
[T]he issue before - me is have you made substantial progress toward your case plan goal one year after [the children] came into the court system? The answer is no, you have not. The experts that are advising me today say no. Your own self-serving testimony tells me perhaps you have, but I don’t have.,. any expert opinion to contradict what the experts at T-PEP are telling me. What I do have are two children who have been living with their grandparents who have made enormous progress from the stability of [their grandparents]. They have stabilized in school. They have stabilized in the community. They have stabilized in their family. They feel safe. They are safe. And I simply have absolutely nothing to convince me that it is not in their best interest, number one, to keep them together as close as they are as sisters. And, number two, keep them together with [their grandparents] who are providing for all of their needs in an outstanding manner. There is absolutely not one shred of evidence that it is not in their best interest to remain where they are in the stable loving placement of their grandparents.
The court followed this ruling with extensive written reasons for judgment on February 17, 2016. It is from the juvenile court’s judgment of January 19, 2016 that R.C. has appealed.
ASSIGNMENTS OF ERROR
On appeal, R.C. raises three assignments of error: (1) the juvenile court committed manifest error in its ruling of January 19, 2016 by finding that the legal custody of T.B. and Z.C. to the maternal grandparents as the permanent plan was in the best interests of the children; (2) the juvenile court committed manifest error by refusing to allow R.C.’s attorney to question witnesses concerning the credibility and reliability of T.B.; and (3) the juvenile court committed manifest error by refusing R.C.’s request to set a further hearing.
DISCUSSION

Assignment of Error One

In R.C.’s first assignment of error, she argues that the juvenile court erred in its January 19, 2016 judgment by permanently placing T.B. and Z.C. in the guardianship of their grandparents.
An appellate court’s review of a juvenile court’s determination of a permanent plan is governed by the manifest error standard. State v. N.C., 50,446 (La. App. 2 Cir. 11/18/15), 184 So.3d 760, 770. Under this standard, the appellate court must not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. Id. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. Id. If the juvenile comet’s findings are reasonable in light of the record reviewed in its *561 entirety, the appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
A court’s determination as to the permanent plan for a child who has been adjudicated in need of care is governed by La. Ch.C. art. 702. Subsection (C) provides:
The court shall determine the permanent plan for the child that is -most appropriate and in the best interest of the child in accordance with the following priorities of placement:
(1) Return the child to the legal custody of the parents within a specified time period consistent with the child’s age and need for a safe and permanent home. In order for reunification to remain as the permanent plan for the child, the parent must be comply--ing with the case plan and making; significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care.
(Emphasis added).
A juvenile court’s determination that a parent has not made significant measurable progress toward achieving the goals of his/her case plan, as required by La. Ch.C. art. 702(C)(1), has been held sufficient' to support the permanent placement of a child outside the parental home. In State ex rel. E.F., 10-1185 (La.App. 1 Cir. 10/29/10), 49 So.3d 575, 579, EJ, a minor child, had been adjudicated in need of care on the basis of physical abuse. The case plan that was later adopted at the disposition hearing provided in pertinent part:
The parents will need to gain an understanding of the injuries their child sustained. They will need to acknowledge that the injuries were non-accidental in nature and that [EJ] was the victim of physical abuse. They need to be able to verbalize how they are going to be able to protect him in the future from an injury such as he has suffered.
See id. at 580.
After the permanency hearing, the juvenile court determined that the parents had not made significant measurable progress toward achieving this goal of their case plan. See id. at 581-82. As a result, the court determined that reunification was not in the child’s best interest and so permanently placed EJ in the guardianship of his godparents. See id. His parents appealed and the First Circuit affirmed. See id. at 586. The court found that the juvenile court had not erred in permanently placing the child in the guardianship of his godparents on the basis of the parents’ failure to make progress toward understanding their child’s injuries, as set forth in the case plan. The court explained:
Pursuant to La. Ch. C. art. 702(C)(1), in order for reunification to remain as the permanent plan for the child, the parents must be complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care. The parents contend that they were complying with their case plan, as was stipulated. However, as noted by the juvenile court, the parents failed to make any progress in complying with the single most important part of their case plan, namely, they failed to provide any explanation for the life-threatening injuries sustained by EJ, and they failed to provide OCS with a plan to ensure EJ’s safety if he were to be returned to them.
Id. at 584.
Similarly, in the present case, the juvenile court’s decision to permanently place the girls in the guardianship of their grandparents was based upon its determi *562 nation that R.C. had not demonstrated significant measurable progress toward the case plan goal of understanding the effects of sexual abuse on T.B.
All parties and the court approved the case plan at the disposition hearing on June 16, 2015. One component of the plan required R.C. to “participate in sexual abuse education to understand the effects of the abuse on [T.B.].” (Emphasis added). No objections were lodged and the court specifically advised R.C. that “if I don’t see significant measurable progress toward all of these treatment goals.. .then you will not be reunited with your children.” (Emphasis added).
Thereafter, R.C. began participating in the case plan. But at each evaluation along the way, both T-PEP and DCFS found that R.C.’s progress was stunted by her refusal to accept that T.B. had been sexually abused. Absent this acceptance, R.C. was unable to empathize with or understand T.B.’s experiences, emotions, and needs, which in turn raised the further concern that R.C. was not suited to ensure her children’s safety and protection. Even at the permanency hearing on January 19, 2016, R.C. was still unwilling to accept T.B.’s allegations of sexual abuse.
Upon our review of the record, we find there is a reasonable factual basis for the juvenile court’s determination that R.C. had not demonstrated significant measurable progress toward the case plan goal of understanding the effects of sexual abuse on T.B. Accordingly, the juvenile court did not manifestly err in concluding that it was in the best interest of T.B. and Z.C. to be permanently placed in the guardianship of their grandparents, rather than be reunited with their mother.
This assignment of error has no merit.

Assignment of Error Two

In R.C.’s second assignment of error, she argues that the juvenile court erred in refusing to allow trial counsel to question witnesses at the permanency hearing regarding T.B.’s credibility.
At the hearing on January 19, 2016, Jesse George, counsel for the children, objected to a line of questioning posed by Jennifer Womble, counsel for R.C., during the direct examination of R.C.’s brother, the girls’ uncle.
MS. WOMBLE: Do you believe the allegation that [T.B.] has made?
THE COURT: Okay. I am not going to allow that. That is completely irrelevant. Move on, Ms. Womble.
MS. WOMBLE: Can you tell me...about [T.B.]. How is [sic] her interactions with everyone?
WITNESS: ... [T.B.] has some struggles, some social anxiety[.] She... has a little problem with authority. She.. .will try to manipulate her way into getting...
MR. GEORGE: I’m going to object, Your Honor.
THE COURT: Sustained. .. .where are you going with this, Ms. Womble?
MS. WOMBLE: Your Honor, my point is I wanted to point out to the Court that.. .my client has had some hesitation in the past believing [T.B.], and that [T.B.] isn’t always...
THE COURT: She’s an 11-year-old child. Let’s move on. I’m not going to allow this line of questioning.
Without lodging an objection to this ruling, Ms. Womble moved on to another line of questioning with the witness. The lack of an objection precludes our review.
To preserve an issue for appellate review, a party must make a timely objection and state the specific ground for *563 the objection. L.R.F. v. A.A., 13-797 (La. App. 5 Cir. 2/26/14), 133 So.3d 716, 722, writ denied, 14-0665 (La. 4/17/14), 138 So.3d 633, cert. denied, — U.S. -, 135 S.Ct. 224, 190 L.Ed.2d 134 (2014) (citing La. C.E. art. 103(A)(1); La. C.C.P. art. 1635). Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. Id.
The failure of R.C.’s counsel to object to the juvenile court’s ruling precludes our appellate review of this issue. Consideration of this assignment of error is therefore pretermitted.

Assignment of Error Three

In R.C.’s third assignment of error, she argues that the juvenile court erred in denying her request for custody of her children and her alternative request for a later hearing. During closing arguments on January 19, 2016, counsel for R.C. requested that the court return T.B. and Z.C. to R.C.’s custody, and in the alternative, that the court set the matter for another hearing in light of J.G.’s recent death.
For the reasons articulated above in our discussion of the first assignment of error, we find that the juvenile court did not err in declining to award custody to R.C. With respect to R.C.’s argument that the court erred in denying her request for another hearing on the matter, she submits in her brief that “[t]o not allow further review of this matter terminates the rights of R.C. to her children[.]” To the contrary, the juvenile court did not terminate R.C.’s parental rights; the court granted guardianship of T.B. and Z.C. to' their grandparents. This disposition remains in force until each child’s respective eighteenth birthday, or until it is modified by the juvenile court. See La. Ch.C. art. 686. If R.C. wishes to regain custody, she may file a motion to modify the disposition pursuant to La. Ch.C. art. 714. See E.F., supra at 585,; see also State ex rel. H.W., 13-0231 (La.App. 1 Cir. 7/25/13), 121 So.3d 1200, 1203, writ denied, 13-2217 (La. 10/11/13), 123 So.3d 1229. Accordingly, we find no error in the juvenile court’s refusal to set the matter for another hearing after establishing a permanent plan.
This assignment of error is without merit.
DECREE
For the foregoing reasons, the January 19, 2016 judgment of the juvenile court is affirmed.
AFFIRMED